Voto disidente emitido por
el Juez Presidente Señor Her-nández Denton.
Hoy, este Tribunal adjudica sumariamente una contro-versia de altísimo interés público. Contrario a lo resuelto por una mayoría de este Tribunal, expediríamos el recurso de autos por entender que la naturaleza e importancia de las controversias constitucionales ante nos ameritan el pronunciamiento de este Tribunal.
Como se sabe, la colegiación compulsoria ha sido un tema de constante discusión pública en nuestro país. A pe-sar de que habíamos expresado que ésta encuentra su jus-tificación legal y su legitimidad tanto en el poder de razón de Estado como en el poder inherente de este Tribunal para regular la profesión legal y administrar la justicia, la Asamblea Legislativa aprobó las Leyes Núm. 121 de 13 de octubre de 2009 (4 L.P.R.A. sees. 772 n., 773-775, 780-781, 783, 2011 y 2021) y Núm. 135 de 6 de noviembre de 2009 (4 L.P.R.A. secs. 772 n., 773-774 y 777-778) que, en esencia, eliminan la colegiación compulsoria y le imponen una serie de requisitos al Colegio de Abogados para su operación interna.
Para disponer del recurso, una mayoría de este Tribunal ha optado por emitir una resolución mediante la cual sos-tiene que la acción de la Asamblea Legislativa es un ejer-cicio válido de sus facultades constitucionales y, además, ordena la publicación de la sentencia del Tribunal de *191 Apelaciones. Esto último porque, de acuerdo con los com-pañeros Jueces, “esa sentencia expone de manera correcta el derecho aplicable”. Resolución, pág. 9.
No obstante, al desatender el recurso de autos, este Tribunal deja en el aire múltiples cuestionamientos que me-recen nuestra cuidadosa atención. Sin que de ningún modo el listado siguiente sea exhaustivo, algunas de estas inte-rrogantes no resueltas son:
(1) ¿Constituye esa acción legislativa una intromisión indebida que viola la separación de poderes frente a nues-tro poder inherente de regular la profesión jurídica y la jurisdicción permanente que decidimos asumir tras el caso de Colegio de Abogados v. Schneider [II], 117 D.P.R. 504 (1986)?;
(2) ¿se viola el derecho a la igual protección de las leyes al brindarle al Colegio de Abogados un trato distinto al que reciben otras organizaciones profesionales?;
(3) ¿constituyen estas leyes una reglamentación inofi-ciosa del derecho a la libertad de expresión del Colegio como organización por el contenido de sus expresiones pú-blicas pasadas, a la luz del voluminoso historial legislati-vo?, y
(4) siendo el Colegio —por vía legislativa— una organi-zación de membresía voluntaria, ¿puede la Asamblea Le-gislativa proscribir determinado contenido de su Regla-mento u operación administrativa?
A nuestro entender, las controversias planteadas en este caso requieren unos pronunciamientos de este Tribunal so-bre la separación de poderes, particularmente en lo que respecta a las facultades para reglamentar el ejercicio de la abogacía y los derechos constitucionales de la más alta jerarquía, como la libertad de expresión y asociación, que reclaman los peticionarios.
Al adjudicar estas controversias, no se debe pasar por alto el hecho de que el Tribunal Supremo de Estados Uni-dos ha expresado en varias ocasiones que no existe razón *192 constitucional para impedir que se le obligue a un profesio-nal a pertenecer a una asociación cuyos fines este no apruebe. Lathrop v. Donoheu, 367 U.S. 820 (1961); Abood v. Detroit Bd. of Educ., 431 U.S. 209 (1977). Con ello en mente, hemos expresado que:
[l]as singulares circunstancias sociopolíticas puertorrique-ñas ... apoyan aun con mayor fuerza la constitucionalidad de la [colegiación compulsoria]. Los intereses públicos en la crea-ción de una sociedad vigorosamente pluralista, en el mejora-miento de la abogacía y en la buena marcha del sistema judicial pesan decididamente más que las inconveniencias personales que pueda acarrear en ciertos casos la colegiación obligatoria. El derecho a la no asociación, derivable del dere-cho contrario consagrado en la constitución ... cede ante los intereses señalados. Colegio de Abogados de P.R. v. Schneider [I], 112 D.P.R. 540, 549 (1982).
No cabe duda, pues, de que existen profundos y medu-lares cuestionamientos sobre la validez de la acción legis-lativa que no fueron atendidos debidamente por el Tribunal de Apelaciones. En consecuencia, no podemos dejar de preguntarnos: ¿han cambiado las condiciones sociopolíticas de Puerto Rico al punto de no requerir la colegiación de los abogados? ¿Hemos sido persuadidos de ello en el ejercicio de nuestro poder inherente? ¿Será este el principio de la descolegiación de profesiones tales como la medicina, la contabilidad pública o la ingeniería?
A nuestro entender, denegar este recurso fundamentán-dose en que el Tribunal de Apelaciones resolvió “de manera correcta el derecho aplicable”, constituye una delegación indebida de nuestra obligación de ser máximos intérpretes de nuestra Constitución. Este caso contiene precisamente el tipo de controversia que nos corresponde atender como foro de última instancia.
De otra parte, discrepamos de las expresiones sobre los méritos de la controversia que se consignan en la resolución. La exposición detallada que se hace sobre el escrutinio aplicable a una acción legislativa de requerir la *193 colegiación obligatoria de un grupo profesional causa pro-funda incertidumbre sobre ciertas disposiciones legislati-vas vigentes que afectan otras profesiones y el alcance de nuestra Constitución en cuanto al derecho a asociarse libremente. Véase, a modo de ejemplo, las disposiciones si-guientes que en la actualidad exigen la colegiación de va-rias profesiones en nuestro país: Art. 12 de la Ley Núm. 211 de 12 de agosto de 2004 (20 L.P.R.A. sec. 3313), Colegio de Actores; Art. 10 de la Ley Núm. 2 de 23 de febrero de 1990 (20 L.P.R.A. sec. 2377), Colegio de Administradores de Servicios de Salud; Art. 21 de la Ley Núm. 265 de 13 de diciembre de 2006 (20 L.P.R.A. sec. 653), Colegio de Agrónomos; See. 3 de la Ley Núm. 96 de 6 de julio de 1978 (20 L.P.R.A. sec. 753), Colegio de Arquitectos; Art. 4 de la Ley Núm. 102 de 27 de junio de 1969 (20 L.P.R.A. sec. 1064), Colegio de Chóferes; Art. 3 de la Ley Núm. 75 de 31 de mayo de 1973 (20 L.P.R.A. sec. 795), Colegio de Contadores Públicos Autorizados; Art. 4 de la Ley Núm. 54 de 21 de mayo de 1976 (20 L.P.R.A. sec. 2604), Colegio de Delineantes; Art. 4 de la Ley Núm. 244 de 14 de agosto de 1998 (20 L.P.R.A. sec. 2247), Colegio de Diseñadores y Decoradores de Interiores; Art. 3 de la Ley Núm. 122 de 12 de junio de 1980 (20 L.P.R.A. sec. 2013), Colegio de Peritos Electricistas; Art. 6 de la Ley Núm. 9 de 20 de marzo de 1972 (20 L.P.R.A. sec. 2116), Colegio de Especialistas de Belleza; Art. 3 de la Ley Núm. 12 de 29 de septiembre de 1980 (20 L.P.R.A. sec. 733), Colegio de Ingenieros y Agrimensores; Sec. 1 de la Ley Núm. 130 de 18 de junio de 1973 (20 L.P.R.A. see. 960), Colegio de Maestros y Oficiales Plome-ros; See. 5 de la Ley Núm. 107 de 10 de julio de 1986 (20 L.P.R.A. sec. 2971a), Colegio de Médicos Veterinarios; See. 13 de la Ley Núm. 124 de 23 de julio de 1974 (20 L.P.R.A. sec. 2192), Colegio de Nutricionistas y Dietistas; Art. 4 de la Ley Núm. 129 de 17 de diciembre de 1993 (20 L.P.R.A. sec. 545c), Colegio de Optómetras; Art. 3 de la Ley Núm. 153 de 9 de mayo de 1941 (20 L.P.R.A. see. 493), Colegio de *194 Químicos; Art. 20 de la Ley Núm. 36 de 20 de mayo de 1970 (20 L.P.R.A. see. 2070), Colegio de Técnicos de Refri-geración y Aire Acondicionado; See. 5 de la Ley Núm. 56 de 13 de julio de 2001 (20 L.P.R.A. sec. 73g), Colegio de Médi-cos Cirujanos; Art. 5 de la Ley Núm. 64 de 3 de julio de 1986 (20 L.P.R.A. sec. 2105b), Colegio de Técnicos Dentales; Art. 4 de la Ley Núm. 50 de 30 de junio de 1986 (20 L.P.R.A. sec. 2145c), Colegio de Técnicos y Mecánicos Automotrices', Art. 6 de la Ley Núm. 44 de 30 de mayo de 1972 (20 L.P.R.A. see. 2156), Colegio de Tecnólogos Médicos Art. 3 de la Ley Núm. 171 de 11 de mayo de 1940 (20 L.P.R.A. sec. 823), Colegio de Trabajadores Sociales See. 5 de la Ley Núm. 306 de 15 de septiembre de 2004 (20 L.P.R.A. sec. 211d), Colegio de Profesionales de la Enfermería Art. 5 de la Ley Núm. 26 de 20 de julio de 2005 (20 L.P.R.A. sec. 235d), Colegio de Enfermería Práctica Licenciada. En suma, adelantar criterios sobre controversias que el Tribunal optó por no atender ahora, es análogo a emitir una opinión consultiva. Ello va contra los precedentes firmemente arraigados de este Tribunal. Peor aún, como demuestra el listado que antecede, el nuevo escrutinio ade-lantado hoy mediante la Resolución del Tribunal pone en peligro de extinción la mitad de la legislación incluida en el Tomo 20 de la colección “Leyes de Puerto Rico Anotadas”.(1)
*195 Por todo lo anterior, expediríamos el auto y pautaríamos la normativa aplicable sobre las diferentes y complejas controversias constitucionales presentadas en este recurso. Además, ante el hecho de que este caso se encontraba en una etapa inicial de descubrimiento de prueba cuando fue acogido por el foro apelativo intermedio, celebraríamos una vista oral para brindarle una oportunidad a las partes de que expongan sus diversas posiciones.
Hace un cuarto de siglo manifestamos la importancia del Colegio de Abogados de Puerto Rico para nuestra pro-fesión cuando nos unimos a la opinión del Tribunal en Co-legio de Abogados v. Schneider II, supra, págs. 513-514, emitida por voz del entonces Juez Presidente Señor Pons Nuñez:
El Colegio de Abogados ha cumplido adecuadamente las obligaciones que le impuso la ley que lo creó. Ha contribuido al mejoramiento de la administración de la justicia; ha formu-lado informes; ha contestado consultas reclamadas por el Go-bierno; ha defendido con celo los derechos e inmunidades de los abogados procurando que éstos gocen ante los tribunales de la libertad necesaria para el buen desempeño de su profe-sión; ha promovido relaciones fraternales entre sus miembros, y ha velado por el sostenimiento de una saludable moral pro-fesional entre los colegiados. También ha contribuido a enri-quecer la vida intelectual de los abogados y ha fortalecido la aspiración colectiva a una sociedad democrática al amparo de la ley.
Una vez más, me reafirmo en esas expresiones. Por la importancia de esta institución en nuestra sociedad, el Co-legio de Abogados de Puerto Rico merecía su día en corte y, con la decisión de hoy, se lo hemos denegado.

 No podemos pasar por alto que las fuentes de derecho citadas por los com-pañeros Jueces en la Resolución del Tribunal, para sostener que una limitación a la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés apremiante, son muy distinguibles al caso de autos. En NAACP v. Button, 371 U.S. 415 (1963), el Tribunal Supremo de Estados Unidos invalidó un estatuto de Virginia que le impedía a los demandantes acercarse a posibles litigantes para ofrecerles representación legal en casos de desegregación. En casos donde el Tribunal Supremo de Estados Unidos se ha enfrentado específicamente a la colegiación compulsoria de abogados, ha aplicado un escrutinio racional:
“Both in purport and in practice, the bulk of State Bar activities serve the function, or at least so Wisconsin might reasonably believe, of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available to the people of the State, without any reference to the political process. It cannot be denied that this is a legitimate end of state policy.” (Enfasis suplido.) Lathrop v. Donohue, 367 U.S. 820, 843 (1961).
*195 Asimismo, la nota de Revista Jurídica del estudiante de U.C. Davis que citan los compañeros jueces analiza el caso de Clingman v. Beaver, 544 U.S. 581 (2005). En ese caso, el Tribunal Supremo de los Estados Unidos validó un estatuto de Oklahoma que le impedía a personas registradas en un partido político votar por candidatos de una primaria de otropartido.